## *ROBERT SHERMAN v. STATE OF OHIO

STRIKING VIOLENTLY AFTER TAKING PROPERTY CONSTITUTES ROBBERY.

> Where one, without threats or putting in fear, wrests from the possession of another anything of value, and immediately thereafter, for the purpose of retaining the possession of the property, on making his escape, violently strikes the other, such violence is concomitant with the taking, and constitutes robbery.

ERROR to the Court of Common Pleas of Lucas county.

At the January term of the court of common pleas of Lucas county, Robert L. Sherman was convicted of robbing one David Cowan, a street-car driver in the city of Toledo, of property consisting of street car tickets and money amounting in value to twenty dollars.

The manner of the taking was described by the prosecuting witness in his testimony, to-wit:

Direct examination: "I went out, and he went outside with me. He was talking, and asked me to let him take the box and count it, and if it was any short, he would make it good. I had it under my left arm, and my hand in my coat pocket. I didn't have any suspicion of the man at all. I didn't know him, and didn't say anything to him. As we walked out through Classen's lot he asked me a couple of times, I guess, to let him have the box to count it. I said 'No.' We went a few rods outside of Classen's lot into a vacant lot and he asked me again to let him have the box to count it, and if it was short he would make it up. He talked very nice. I said 'No.' He turned at once in front of me and grabbed the box from under my left arm and jerked it out and struck me across the face and nose, and then he run. He run kind of north-west from there, as I thought, after he struck me with the box. I didn't see him for an instant or two, but judged that he run kind of north-west from there."

Chas. A. Thatcher and Frank T. Pennington, attorneys for plaintiff in error.

Plaintiff in error was indicted under sec. 6818, Rev. Stat. The gist of the offense of robbery under this statute is the taking of property from the person of another by force and violence, or by putting in fear. It cannot be contended that there was any "putting in fear," and that being eliminated, we claim that the property was secured without force and violence, and that it is immaterial what force and violence may have been used after he had secured the property.

1. With respect to the degree of force and violence necessary to constitute the crime of robbery, more than a sudden taking or snatching must be shown, In support of which we cite the following:

Rex v. Gnosil, 1 C. & P., 400; King v. McCauley, 1 Leach, 287; King v. Baker, 1 Leach, 290; Steward's case, 2 East P. C., 702; Regina v. Walls, 2 C. & P., 214; People v. McGinty, 24 Hunn., 62; McLoskey v. People, 5 Park., 299; Shinn v. State, 64 Ind., 13; Bonsall v. State, 25 Ind., 460; 25 Ind., 403; 5 Jones' Law (S. C.), 163; 2 Wharton Criminal Law, sec. 1701; 2 Russell on Crimes, 4th Am. Ed., 63-67.

2. The property taken was completely severed from the person of the prosecuting witness, Cowan, before the blow was struck by Sherman, hence the asportation was complete before the force and violence occurred.

King v. Lapier, 1 Leach, 320; King v. Peat, 1 Leach, 228; King v. Simp-

---

* This decision was affirmed by the supreme court, without report, May 13, 1890.

son, 29 Eng. Law and Eq., 530; 2 Russell on Crimes, p. 62-3; 3 Green. Evidence, sec. 225.

Sherman had such possession of the property as to have made him guilty of larceny or pocket picking under our statute, had he never struck Cowan with the box, and if guilty of pocket picking it is impossible for him to be guilty of robbery.

Eckles v. State, 20 O. S., 508; Harrison v. People, 50 N. Y., 518; Flynn v. State, 42 Texas, 301; Dukes v. State, 22 Texas, Ct. Appls., 192; 2 Russell on Crimes, p. 95, and cases; 2 Bishop Criminal Law, sec. 794-795.

The violence did not occur until after Sherman had become completely possessed of the property. Hanson v. State, 43 O. S., 376; Shinn v. State, 64 Ind., 13; 2 Arch. Cr. Pr., 1290.

J. H. Southard, prosecuting attorney, for defendant in error.

In robbery, as in all kinds of stealing, there must be an unlawful taking—and the taking must be "In the language of the law from the person."

"The meaning of the legal phrase is not that the taking must necessarily be from the actual contact of the body, but if it be from under the personal protection, that will suffice." Turner v. State, 1 O. S., 422.

And the above rule applies whether the taking of the property from under that personal protection, or from the personal presence of the owner be accomplished by putting in fear or by personal violence or both.

In United States v. Jones, 3 Wash. C. C., 209-216, is to be found the following: "In robbery it is sufficient if the property be taken in the presence of the owner;" "it need not be taken immediately from his person, so that it be by violence to his person or by putting him in fear.

The act and offense of robbery, then, is committed when a person unlawfully takes and steals property from "under the personal protection of the owner," or from his personal presence, when such taking is effected and accomplished through, and by means of actual violence to the person, or by putting in fear.

Supposing in the case of State v. Turner, *supra*, where the defendant entered the house, the owner of the bank bills had been sitting quietly at his desk or secretary with the bills lying thereon; and supposing the thief, unobserved by the owner, simultaneously with the snatching of the bills from the desk, had pointed the revolver at the head of the owner, or had knocked him senseless with a club, the crime of robbery would have been committed.

Supposing the snatching to have immediately preceded the blow and to have been accomplished before the owner was aware of the presence of the thief; Would the act have been less than robbery? The intent was to steal the bills; to take them from the owner, from his personal presence and his personal protection, by the use of force and violence upon his person.

Supposing in the case at bar the defendant had grabbed the box and at the same time had struck the prosecutor over the head with a club, or supposing the grabbing to have been first, the blow following immediately thereafter; the character of the act would not have been changed in any way.

Under the construction given to the language of the statute in the case of Turner v. State, *supra*, and all other decisions so far as I am aware—the reading of the statute might be thus:

"If any person shall by the employment of force or violence against the person of another or by putting him in fear, take from his personal presence, or from 'Under his personal protection' any money or personal property of any value, etc.

"Within this doctrine, the person may deem to protect all things belonging to the individual within a distance not easily defined, over which the influence of the personal presence extends." Rex v. Peat, 1 Leach, 4th Ed., 228; Rex v.

Lapier, 1 Leach, 4th Ed., 320-1; 2 Bishop Criminal Law, sec. 1178; 1 Bishop Criminal Law, sec. 553.

In this case the evidence shows that the blow struck and the taking of the property were parts of the same act—the violence was inflicted for the purpose, and as a means of getting possession of the property, the intent being to steal it.

The present case is one differing widely from those cited by counsel for plaintiff in error, where the violence used was after the property taken had been once removed from the person, the presence, and the personal protection, of the owner, and had been used merely to avoid an arrest or for a purpose other than the getting possession of the property.

In Hanson v. State, 43 O. S., 376, and in many of the decisions, it is stated in words or in substance, that the violence essential to the crime of robbery must be "concomitant" with the taking of the property. The word "concomitant" as defined by Worcester and Webster means, "accompanying; conjoined with; concurrent with."

BENTLEY, J. (orally).

In the case of Robert L. Sherman v. The State of Ohio, we were in consultation with Judge Scribner concerning it, before he went away, and we came to a certain conclusion, which we will briefly announce.

Of course the question is—and the only question is: what is the violence which is required in order to constitute a robbery? In this case, the record indicates that there was no putting in fear whereby the property was obtained from the prosecuting witness. The question is, whether violence, actual violence, was used such as would meet the requirements of the statute.

It seems from the testimony that the robbery was committed by snatching or jerking the box which contained the money stolen, from its position between the body and the arm of the prosecuting witness, and that then, immediately, instantly, a blow was given by the defendant, with the box, to the prosecuting witness.

It is argued, and various cases are cited to sustain the position, that this violence occurred after the taking of the property from the possession of the prosecuting witness, and that its object was not for the purpose of getting possession of the property but to effect an escape, or to retain possession of the property, or both, and it is claimed that that is not sufficient.

It seems to be very clear, from the authorities, that if the violence occurred some time—after some interval had elapsed—after the taking, that the violence thus administered would not be sufficient. But the court charged the jury in this case that if the box was snatched substantially as claimed by the prosecuting witness and the blow instantly given, then and there, that it would be such violence as, with other matters concurring, would sustain the charge of robbery.

For myself, I was considerably impressed with the argument made on behalf of the defendant, and I think I may say that my brethren on the bench were also. There remains a question of fact raised—whether violence occurring in that way was or was not, in contemplation of law, concomitant with the taking of the property. A blow that was so instantly given, whether or not it might not be considered as a part of the same transaction by which the taking was effected. I think I may say for all the judges that we regard it as a matter of considerable doubt whether or not the charge in this particular was correct, or whether, under the circumstances as disclosed by the record a robbery was in fact committed; but this is a petition in error, and, of course, for us to be justified in reversing the judgment we must feel perfectly clear, or at least reasonably clear, that the law was not correctly defined by the court below or that the facts clearly did not support the charge. We think that this is a case which it would be eminently proper for the supreme court to pass upon, at an early day, and

while regarding it as a case of doubt, not being satisfied that the rulings were clearly erroneous to a degree that would warrant us in disturbing the verdict, we have concluded to affirm the judgment. That is the conclusion of the court and that will be its order.

Note—The case was taken to the supreme court on motion for leave to file petition in error to the circuit court of Lucas county, which motion was on May 13, 1890, overruled by the court.